IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **DARREL A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. CBD-19-2351** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Darrel A. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 14, Plaintiff's Alternative Motion for Remand, ECF No. 14, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 18. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

1

I.   **Procedural Background**

On November 17, 2014, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA, alleging disability beginning June 1, 2014.[1]  R. 12.  Plaintiff alleged disability due to seizures.  R. 83, 92, 104, 114.  Plaintiff's claims were initially denied on February 1, 2016, and upon reconsideration on June 7, 2016.  R. 12.  An administrative hearing was held on December 5, 2017.  R. 12.  On July 5, 2018, Plaintiff's claims for DIB and SSI were denied.  R. 27–28.  Plaintiff sought review by the Appeals Council, which concluded on June 18, 2019, that there was no basis for granting the request for review.  R. 1.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

II.  **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).  The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant

---

[1] It appears Plaintiff filed a subsequent application for disability on March 9, 2015, alleging disability due to seizures and arthritis.  R. 73-80.  Plaintiff's claims were denied.  *Id.*  However, it does not appear that there were any administrative appeals on this specific application, and the Social Security Administration, moved forward with the initial application dated November 17, 2014.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).  The Code of Federal Regulations outlines a five-step process ("Five-Step Analysis") that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945 (a). The ALJ must present a "narrative discussion describing

4

how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

## III.  Analysis

The ALJ evaluated Plaintiff's claim using the Five-Step Analysis. R. 14-27. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 1, 2014, the alleged onset date. R. 14. At step two, under 20 C.F.R. § 404.1520(c) and § 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: cervical radiculopathy, bilateral carpel tunnel syndrome, convulsions/seizure disorder, and asthma. *Id.* The ALJ stated that the listed impairments were severe because they "significantly limit the [Plaintiff's] ability to perform basic work activities." *Id.* At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

(20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* at 14-15. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). The ALJ discerned that Plaintiff had the following limitations:

> [Plaintiff] can frequently push, pull, and reach with the left upper extremity; frequently handle, finger, and feel with both upper extremities; occasionally climb ramps/stairs and balance; never climb ladders/ropes/scaffolds; and can never drive. [Plaintiff] can have no exposure to workplace hazards (e.g., unprotected heights and moving machinery) and occasional exposure to extreme heat/cold, humidity, odors, dust, gases, fumes, allergens, and pulmonary irritants. [Plaintiff] is limited to a low-stress job involving simple and routine tasks; no work involving production quotas or where the pace of productivity is dictated by an external source over which the individual has no control (e.g., assembly lines or conveyor belts); and no tandem tasks. [Plaintiff] can work for 2-hour intervals and then requires a 5-10 minute break.

R. 16. At step four, the ALJ determined Plaintiff is unable to perform any past relevant work. R. 26. At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: laundry classifier, router, and seconds handler. R. 27. The ALJ found that Plaintiff has not been under a disability, as defined in the SSA. *Id.*

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or in the alternative, remand the case to the Commissioner for further proceedings, alleging that Defendant's final decision is not supported by substantial evidence. Pl.'s Mem. in Supp. of Pl.'s Mot. 4, ECF No. 14–1. Specifically, Plaintiff avers that 1) the ALJ erroneously assessed Plaintiff's RFC because she failed to properly evaluate whether Plaintiff's impairments met or equaled listing 1.04A, and 2) the ALJ set forth an inadequate hypothetical, affecting the ALJ's RFC determination. *Id.* at 9, 18. For the reasons set forth below, the Court **REVERSES** the ALJ's decision and **REMANDS** the matter for further proceedings.

**A. The ALJ failed to properly evaluate Plaintiff's impairments under the requirements of Listing 1.04A.**

Plaintiff argues that the ALJ failed to properly evaluate his impairments under Listing 1.04A because the ALJ failed to explain the reasons for determining that his conditions did not meet or equal a Listing. *Id.* at 9–10. Plaintiff contends that the ALJ provided an inaccurate and cursory analysis of Listing 1.04A. *Id.* at 10. Plaintiff avers that the only basis for the ALJ's step-three denial of Listing 1.04A, is directly impeached by the ALJ's step-two conclusion, wherein she found "cervical radiculopathy, to be a medically determinable, severe impairment. *Id.* at 15. Specifically, Plaintiff alleges that "at step two of the sequential evaluation, the ALJ found 'cervical radiculopathy,' to be a medically determinable, severe impairment. [Additionally] at step-three, the ALJ determined that the record contained ample evidence to warrant full consideration of Listing 1.04A. However, the ALJ concluded that Plaintiff did not meet or medically equal the requirements of Listing 1.04A solely because he had not established evidence of 'cervical radiculopathy.'" *Id.* at. 13–14. Plaintiff contends that remand is warranted, because the only reason the ALJ found that Plaintiff did not meet Listing 1.04A is contradictory to her step-two analysis. *Id.* at 14–15. Defendant counters that Plaintiff failed to show that he meets all the requirements of Listing 1.04A. Def.'s Mem. in Supp. of Def.'s Mot. 4, ECF No. 18–1. This Court agrees with Plaintiff.

At step three of the ALJ's Five-Step Analysis, the ALJ must assess a claimant's impairments or combination of impairments and determine whether they are of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). Listing 1.04A is the regulation that "identif[ies] disorders of the spine that merit a conclusive presumption of disability and an award of benefits." *Radford v. Colvin*, 734 F.3d 288, 290 (4th Cir. 2013). According to the regulation,

an individual must have a "[d]isorder the spine . . . resulting in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A; *Taylor v. Colvin*, No. CV ADC-15-2204, 2016 WL 3190637, at *6 (D. Md. June 6, 2016).

In addition, the claimant must meet one of the following sets of criteria:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* "The burden of proof is on [Plaintiff] to show that [he] meets all of the specified medical criteria." *Hepding v. Comm'r, Soc. Sec. Admin.*, No. ADC-17-3697, 2018 WL 6172497, at *6 (D. Md. Nov. 11, 2018) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). In addition to showing the presence of each symptom, Plaintiff must show that he "has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." *Radford*, 734 F.3d at 294. A claimant need not show the symptoms were present "simultaneously," in close proximity to one another, or even uninterrupted; rather, they may be intermittent and a claimant may "prove a chronic condition by showing that he experienced the symptoms 'over a period of time,' as evidenced by 'a record of ongoing management and evaluation.'" *Id.* (citations omitted).

At step-three of the ALJ's Five-Step Analysis, the ALJ is also required to "… identify the relevant listings and compare each of the criteria to the evidence of the claimant's symptoms when there is 'ample evidence in the record to support a determination' that the claimant's impairments meet or equal a listing." *Combest v. Comm'r., Soc. Sec. Admin.*, No. SAG-15-1098, 2016 WL 3512135, at *2 (D. Md. June 22, 2016) (citing *Cooks v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986)). "Remand is not warranted 'in circumstances where it is clear from the record which listing or listings . . . were considered,' and the court can still 'readily determine whether there was substantial evidence to support the ALJ's Step Three conclusion.'" *Id*. (citing *Schoofield,* 220 F. Supp. 2d at 522). However, "[r]emand is appropriate where the 'ALJ's opinion failed to apply the requirements of the listings to the medical record.'" *Hepding*, 2018 WL 6172497, at *6 (citing *Radford,* 734 F.3d at 292). If an ALJ fails to specifically apply the pertinent legal requirements to the record evidence, the court is unable to conduct meaningful review. *Letitia L. v. Comm'r., Soc. Sec. Admin.*, No. DLB-18-3982, 2019 WL 7370355, at *3 (D. Md. Dec. 31, 2019) (citing *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015)).

The ALJ's analysis of Listing 1.04 is as follows:

> Specific attention was paid to section 1.04 of the medical listings for the musculoskeletal system. The evidence of record does not establish (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. There are no spine x-rays or MRI tests in the record to establish of nerve root compression, spinal arachnoiditis, or lumbar spine stenosis that resulted in pseudoclaudication. Further, his December 2014

>upper extremity EMG/nerve conduction study confirmed no evidence of cervical radiculopathy.

R. 15 (internal citations omitted). As explained *infra*, the ALJ's cursory analysis does not abide by the legal requirements of the listings, hindering the Court's ability to conduct meaningful review.

> **1. The ALJ erred because in step two, she concluded that Plaintiff suffers from the severe impairments of cervical radiculopathy, but then contradicted herself in step three by concluding there was no evidence of nerve root compression.**

Radiculopathy is defined as: "Irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." *Jeanette D. v. Saul*, No. CV CBD-18-2664, 2020 WL 1043264, at *5 (D. Md. Mar. 3, 2020) (citing *Taylor,* 2016 WL 3190637, at *7, n.2 (citing *Radiculopathy*, Merriam-Webster Collegiate Dictionary, (11th ed. 2003))); *See also Walker v. Colvin*, No. CBD-15-2293, 2016 WL 8669936, at *4 (D. Md. July 15, 2016) (stating that radiculopathy is defined as compression of the nerve root) (citing *Radiculopathy*, Gale Encyclopedia of Medicine (2008)). "[R]adiculopathy is a disease of the nerve roots" and "[n]erve root compression is a form of radiculopathy." *See Hays*, 907 F.2d at 1457 nn.4–5; *Helene C. v. Comm'r Soc. Sec. Admin.*, No. DLB-18-2938, 2019 WL 7370353, at *3 (D. Md. Dec. 31, 2019) (citing *Walker*, 2016 WL 8669936, at *4); *Jeffery L.B. v. Berryhill*, No. TMD-17-2393, 2019 WL 556842, at *4 (D. Md. Feb. 2, 2019); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *5 (D. Md. Sept. 24, 2019).

Additionally, as the Court established in *Jeanette D. v. Saul*, there are multiple medical sources that define radiculopathy as nerve root compression. *Jeanette D.,* 2020 WL 1043264, at *5; *See* Dani J. Tennenhouse, 2 Attorneys Medical Deskbook *Types of Pain* § 26:8, Westlaw (database updated October 2020) (listing radiculopathy and nerve root compression

synonymously); Johns Hopkins Medicine, *Health: Radiculopathy*, https://www.hopskinsmedi-cine.org-/health/conditions-and-diseases/radiculopathy (last visited Feb. 9, 2021) ("Cervical radiculopathy describes a compressed nerve root in the neck"); American Academy of Orthopaedic Surgeons, *Cervical Radiculopathy (Pinched Nerve)*, https://orthoinfo.aaos.org/en/diseases-conditions/cervical-radiculopathy-pinched-nerve (last visited Feb. 9, 2021) ("Cervical radiculopathy, commonly called a "pinched nerve" occurs when a nerve in the neck is compressed or irritated . . .").

As Plaintiff notes, the Court considered this issue in *Walker v. Colvin*. Pl.'s Mem. in Supp. of Pl.'s Mot. 15. *Walker*, 2016 WL 8669936. In that case, the plaintiff argued that "since the ALJ found that the plaintiff suffered from radiculopathy at step two, he should meet a Listing at step three because the definition of radiculopathy is nerve root compression." *Id.* at *4. This Court found persuasive the plaintiff's argument in *Walker* and remanded the case to the ALJ, finding that "the ALJ improperly decided this issue given that at step two, the ALJ concluded that one of [the plaintiff's] severe impairments was radiculopathy or nerve root compression." *Id.*

Here, the ALJ acknowledged Plaintiff's diagnosis of cervical radiculopathy and considered it a severe impairment at step two of the Five-Step Analysis. R. 14. However, the ALJ in step three, determined that Plaintiff did not meet the requirements for Listing 1.04A because the record did not establish evidence of cervical radiculopathy or nerve root compression. *Id.* at 14-15.

First, this Court finds that the ALJ directly contradicted herself by finding in step two of the Five-Step Analysis that Plaintiff suffered from cervical radiculopathy, but then in step three, stating that evidence showed no evidence of cervical radiculopathy. The ALJ also contradicted

11

herself, by finding in step two that Plaintiff suffered from cervical radiculopathy, but then in step three, indicating that there was no evidence of nerve root compression. *Id.* As mentioned above, this Court and medical sources, have deemed cervical radiculopathy as synonymous to nerve root compression. This renders the ALJ's explanation inaccurate and void.

Accordingly, the ALJ's contradiction in step two and step three, and the ALJ's error regarding whether cervical radiculopathy is synonymous to nerve root compression, requires remand.

> 2. **The ALJ failed to explain whether each element of Listing 1.04, was met, and the ALJ failed to support her decision on whether Plaintiff met Listing 1.04 with substantial evidence from the record.**

Plaintiff argues that the "ALJ's reliance on x-rays, MRI tests, and EMG nerve conduction studies . . . is contrary to applicable law." Pl.'s Mem. in Supp. of Pl.'s Mot. 16. Plaintiff alleges that, "Listing 1.04 does not require Plaintiff's nerve root compression . . . to be confirmed by medically acceptable imaging, such as x-rays, MRI tests, or EMG/nerve conduction studies." *Id.* This Court agrees.

As previously mentioned above, to meet Listing 1.04A, Plaintiff must show:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A. As Plaintiff contends, Listing 1.04A, does not require any acceptable imaging, such as x-rays, MRI tests, or EMG/nerve conduction studies. *Id.*; Pl.'s Mem. in Supp. of Pl.'s Mot. 16. However, Listing 1.04B, requires ". . . an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging" and

Listing 1.04C requires ". . . findings on appropriate medically acceptable imaging." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

Here, the ALJ determined that Plaintiff did not meet Listing 1.04, concluding that "there are no spine x-rays or MRI tests in the record to establish evidence of nerve root compression, spinal arachnoiditis, or lumbar spine stenosis that resulted in pseudoclaudication." R. 15. The Court finds this reasoning insufficient for meaningful review. For the court to engage in substantial evidence review, the court must have a "record of the basis for the ALJ's ruling." *Radford*, 734 F.3d at 295. "The record should include a discussion of which evidence the ALJ found credible and why . . ." *Id.* The ALJ in this case did not support her finding with any evidence from the record. The ALJ failed to specify why each element of Listing 1.04, was not met. The ALJ should have explained specifically why Listing 1.04A was not met, with evidence from the record. The ALJ concluded that "there are no spine x-rays or MRI tests in the record to establish evidence of nerve root compression, spinal arachnoiditis, or lumbar spine stenosis that resulted in pseudoclaudication," however, that conclusion appears to address Listing 1.04B and 1.04C. Essentially, the Court is left to speculate which element in Listing 1.04 the ALJ's analysis applies to. "It is not the Court's role on judicial review to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Jeanette D,* 2020 WL 1043264, at *6 (citing *Fox*, 632 F. App'x at 755). Further, "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Radford*, 734 F.3d at 295 (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). For the above-mentioned reasons, remand is appropriate.

On remand, the ALJ is instructed to reassess the evidence in the record, under the standard articulated in *Radford*. Further, the ALJ should specifically identify each element of Listing 1.04, as well as any other listing that the record implicates, and articulate which evidence in the record supports her finding, for each element of the pertinent listings, so that a reviewing court can conduct meaningful review.

### B. The ALJ erred by not defining the term "production quotas" in the hypothetical question posed to the VE.

Plaintiff asserts that "the ALJ fail[ed] to define a limitation she posed to the vocational expert and subsequently included in her RFC." Pl.'s Mem. in Supp. of Pl.'s Mot. 18. Specifically, Plaintiff alleges that the hypothetical posed to the VE and corresponding RFC, contained a limitation, precluding "production quotas," which is not defined by Social Security Regulations nor the Dictionary of Occupational Titles. *Id.* Thus, without defining "production-quotas," the VE could not have been aware of the specific limitation contemplated by the ALJ. *Id.* Defendant counters that the *Thomas* and *Perry* courts do not address the limitation in question, "no work involving production quotas . . ." Def.'s Mem. in Supp. of Def.'s Mot. 6-7. The Court is unpersuaded by Defendant's argument that the case law does not specifically address the undefined term "production quotas."

The Commissioner employs a VE to offer evidence on whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2011). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's

14

impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).  The ALJ is afforded substantial leeway in the formulation of hypothetical questions.  *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)).

Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.  *Thomas*, 916 F.3d at 312.  The second component, the ALJ's logical explanation, is just as important as the other two.  *Id.*  Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.  *Id.* (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Plaintiff points to the Court's opinion in *Thomas*, where the Court found that the use of the terms "production rate or demand pace," was a basis for remand, as the ALJ did not define the terms "production rate pace or demand pace."  *Id.*  The Court in *Thomas* explained that:

> [T]he ALJ stated Thomas could not perform work, requiring a production rate or demand pace, [and thusly the ALJ] did not give us enough information to understand what those terms mean. *Id.* [Further], [t]hat makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence.

*Id.  See Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding that the ALJ's use of the term "non-production oriented work setting," which is not defined by the regulations or case law or otherwise self-explanatory, prevented meaningful review because the reviewing court could not determine what the ALJ meant by the term or whether there was a "logical bridge" between the evidence in the record and the ALJ's inclusion of the limitation).

There are other cases in which this district found that the ALJ's use of an undefined term prevented meaningful review.  See *Travis X. C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897, at *5 (D. Md. Sept. 20, 2019) (where the Court found that the ALJ's use of the undefined term "production rate pace" was an "inadequate explanation of his assessment of Plaintiff's RFC."); *Victoria R. v. Comm'r, Soc. Sec. Admin.*, No. CV DLB-19-1752, 2020 WL 1929719, at *2 (D. Md. Apr. 21, 2020) (where the Court found that "the term 'production rate pace' is similar to the terms 'production rate' and 'demand pace' that the Fourth Circuit found frustrated appellate review in *Thomas*.");  *Jeffrey H. v. Saul*, No. CV TJS-20-0050, 2020 WL 6685282, at *2 (D. Md. Nov. 12, 2020) (where the Court found that,  "[t]he ALJ [did] not define the term 'production rate pace' and the Court is uncertain what the ALJ meant by this term."); *Mona S. v. Saul*, No. 8:19-CV-00990-GLS, 2020 WL 3440130, at *3 (D. Md. June 23, 2020) (where the Court found that the ALJ's failure to define the phrase "no production rate for pace of work" meant that "Plaintiff's RFC assessment [could not] be meaningfully reviewed."); *Dawn G. v. Saul*, No. CV TJS-18-3426, 2020 WL 93950, at *2 (D. Md. Jan. 8, 2020) (where the Court found that "the ALJ committed the same error as in *Thomas*," by administering a hypothetical with the undefined term "production rate pace."); *Keith B. v. Saul*, No. 1:19-CV-00803-GLS, 2020 WL 3439261, at *3 (D. Md. June 23, 2020) (where the Court agreed with Plaintiff's argument that  "'production pace' work is not defined by Social Security Regulations nor the Dictionary of Occupational Titles, and is not a phrase that has a common meaning. Thus, the absence of a definition led the VE to consider a flawed hypothetical and to reach an erroneous conclusion."). [2]

Here, the ALJ posed this hypothetical to the VE.

> …[Plaintiff] is limited to a low-stress job involving simple and routine tasks; no work involving production quotas or where the pace of productivity is dictated by

---

[2] There are several cases in this District where the Court has remanded the case to the ALJ, for failing to define an undefined term.  This Court has referenced some recent cases as examples.

>an external source over which the individual has no control (e.g., assembly lines or conveyor belts); and no tandem tasks. [Plaintiff] can work for 2-hour intervals and then requires a 5-10 minute break.

R 17. The ALJ in this case, as the cases mentioned above, failed to define "production quotas." The use of the term "production quotas" is ambiguous, and it is unclear what the ALJ meant by that term. After the ALJ states, "no work involving production quotas" in the RFC posed to the VE, the ALJ then states "or where the pace of productivity is dictated by an external source over which the individual has no control (e.g., assembly lines or conveyor belts)." Although the limitation described by the ALJ, "or where the pace of productivity is dictated by an external source over which the individual has no control (e.g., assembly lines or conveyor belts)," could be confusing, the ALJ included a definition for the limitation "where the pace of productivity is dictated by an external source over which the individual has no control" immediately thereafter, by stating "(e.g., assembly lines or conveyor belts)." *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) ("the ALJ provided a clear explanation of the 'production-rate pace' limitation. Considering the ALJ's explanation, the RFC adequately accounted for Plaintiff's limitation in concentration, persistence, or pace."). However, that is not the case with the term "production quotas." There was no explanation immediately thereafter, nor an explanation to what the ALJ meant by this term, to the VE. The Court here is left to speculate, whether the ALJ's RFC was supported by substantial evidence.

Defendant contends that the *Thomas* and *Perry* courts do not address the limitation in question, "no work involving production quotas." Def.'s Mem. in Supp. of Def.'s Mot. 6–7. As mentioned above, the Court finds Defendant's argument without merit. The *Thomas* court ruled that by using the terms "'production rate or demand pace,' the ALJ did not give [the Court] enough information to understand what those terms mean[t]." *Thomas*, 916 F.3d at 312. The

Court explained that it made it difficult, "if not impossible, for [the Court] to assess whether their inclusion in Thomas's RFC is supported by substantial evidence." Similarly, the Court finds that by using the term "production quotas," it is difficult to ascertain whether the ALJ's RFC is supported by substantial evidence. The issue in this case is the undefined term. Regardless of what term or phrase the ALJ uses, if it is not defined in the DOT, explained in the RFC hypothetical, or explained to the VE, the Court is left to speculate what the ALJ means and in those cases, remand is necessary.

Accordingly, this case is remanded. On remand, the Court shall provide a proper definition of the term "production quotas."

## IV. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

March 10, 2021

/s/
Charles B. Day
United States Magistrate Judge

CBD/pjkm